JOEL W. FITHIAN, ADMINISTRATOR OF PHILIP NUGENT, DECEASED, RESPONDENT, v. PENNSYLVANIA RAILROAD COMPANY, APPELLANT.

Submitted July 9, 1917—Decided March 4, 1918.

1. Upon the trial of an action against a railroad company to recover damages for the death of a man who was struck and killed by a train, evidence was presented that an order had been issued by defendant to train crews to drift, or proceed without power applied, past a certain point where decedent, with other workmen, was employed in repairing a bridge across the tracks of the defendant; it was further shown that the order was carried out, but that the train which struck decedent was going at a high rate of speed, and gave no signal of its approach, and failed to observe the order referred to.  *Held*, that the negligence of the defendant company, and the contributory negligence of the plaintiff's decedent, were questions for the jury, and the motion for a nonsuit and for the direction of a verdict for the defendant, were properly denied.
2. What the law of a sister state was at a given time is a question of fact, to be ascertained by testimony of opinion witnesses, and like any other question of fact was for the jury to determine.

---

On appeal from the Supreme Court.

276     COURT OF ERRORS AND APPEALS.

Fithian v. Penna. R. R. Co.          *91 N. J. L.*

For the appellant, *Gaskill & Gaskill.*

For the respondent, *Joseph C. Haines* and *John W. Wescott.*

The opinion of the court was delivered by

KALISCH, J.   The refusal of the court below to order a nonsuit and to direct a verdict for appellant, when moved to do so by appellant's counsel, are made the fundamental basis of this appeal.

The appellant having entered into its defence, we need only consider, in respect to the motions made, whether there is any evidence in the cause, arising from any source, which, in law, warranted the submission of the facts, by the trial court, to the decision of the jury.

The facts developed at the trial are these:

The plaintiff's intestate, Philip Nugent, met his death, on the 6th day of April, 1915, as the result of being struck by an eastbound train of the appellant company, at a point, a short distance west of Berwyn station, in the State of Pennsylvania.   The train that struck the deceased was running west from Philadelphia.   On the date mentioned, near the point where the accident happened, the deceased was in the employ of Gibbs & Hill, and belonged to a gang of men at work placing iron screens underneath the span of an overhead wagon bridge crossing the tracks of the appellant company, and at which character of work the gang had been engaged for two weeks prior to the day of the accident.   In doing this work the deceased and his fellow-workmen were, at times, necessarily required to walk along and across the tracks of the appellant company for a short distance west of Berwyn station.   The tool box was located on a raised platform of the appellant's freight house, at the Berwyn station, the platform being on the northerly side of the tracks, the side on which passengers alight from trains running west from Philadelphia.   Prior to the day of the accident the appellant company had issued an order to its train crews commanding them during working hours, to drift (or to proceed

JUNE TERM, 1917. 277

*91 N. J. L.* Fithian v. Penna. R. R. Co.

without power applied) under those bridges upon which men were at work. This order was communicated by the foreman to the men in the presence and hearing of the deceased.

After the making of this order it appears that the appellant's trains drifted along at the point where the men were at work on the bridges. On the morning of the day of the accident, the deceased, on his way to work, alighted from a train at Berwyn station, went to the tool box and took therefrom a pair of overalls and then proceeded along the northerly side of the railroad tracks to a point a little over three hundred feet from the bridge where it became necessary to cross the tracks of the railroad company, four in number, in order to reach a certain path, beginning a short distance east of the base of the wagon bridge and leading up to the level of the floor of the bridge, which bridge spanned a deep cut through which the railroad tracks ran and upon which bridge work was being done, by the workmen of Gibbs & Hill, of the character above mentioned. The deceased stopped and looked up and down the tracks, and, observing no train, he started to cross, and did cross, two tracks, when he stopped again and looked towards the bridge, at which time he observed that there was a freight train on track three, a considerable distance away from the point where the deceased was crossing, and which train was going slowly in an easterly direction. The deceased crossed track three safely and was struck on track four, by the locomotive of a passenger train which was going in an easterly direction at a high rate of speed, without giving any signal or warning of its approach and without having observed the order to drift.

There was also testimony to the effect that the passenger train being on track four, its approach was obscured from the observation of the deceased by the slowly moving freight train on track three, and was also obscured from observation by a curve in the line on the far side of the highway bridge.

From the facts as stated, and which are borne out by the evidence, it is clear that the motion to direct a verdict for the defendant was properly denied. The testimony tended to establish negligence of the defendant company.

278    COURT OF ERRORS AND APPEALS.

Fithian v. Penna. R. R. Co.          *91 N. J. L.*

Whether the appellant company exercised reasonable care under the circumstances, and whether the deceased used reasonable care for his own safety, were jury questions and were properly submitted to the jury for decision.

Counsel for appellant make the point in their brief that there was no proof in the case that Gibbs & Hill were doing work for the appellant company, and, therefore, the deceased, the employe of Gibbs & Hill, was unlawfully crossing the railroad tracks and a trespasser. This point is not presented by any of the grounds of appeal relied on by the appellant and is not entitled to be considered. But it is not out of place to remark here that in the answer filed by the appellant in the action against it, it expressly admits that Gibbs & Hill were in its employ and doing work for it at the time of the accident.

The first three grounds of appeal are founded upon objections to questions put to witnesses for the plaintiff in the court below by counsel for plaintiff, it appearing that the deceased was present at the time of the occurrence to which the question related. "Q. Did you get any instructions from the foreman about the movement of trains under the bridge while you were working there?" No harm could possibly have resulted to the appellant if this question was answered either in the affirmative or negative. But this question was followed with the inquiry: "Q. What were those instructions?" When this question was put to the witness Powers, counsel for appellant interposed an objection, and the witness answered it, but when the same question was put to the witness Doyle, it was objected to and an exception noted. The substance of the answer to the question was that the foreman told the men that the trains were to drift under the bridge where the men were at work. The trial judge in permitting the question to be answered said: "I understand it is intended to be followed up by proof that the practice to which the witness is about to refer was acted upon by the railroad."

There was ample proof adduced by the plaintiff establishing that the practice referred to was acted upon by the rail-

road company. The action of the court, therefore, in admitting the question to be answered was proper.

The fourth, fifth, sixth and seventh grounds of appeal relate to objections made by counsel for appellant to the competency of a practicing lawyer of the State of Pennsylvania, to testify as to the law of that state governing the liability of railroad companies upon the facts and circumstances developed in the cause.

Counsel for appellant argue that what the law of Pennsylvania was at the time of the accident was a question of law, to be gleaned from the decision of the courts of that state, by the trial judge, and to be judicially determined by him, and that, therefore, the court erred in permitting the expert witness to give his opinion as to the subject-matter of inquiry.

The rule is well and firmly established, in this state, contrary to the appellant's contention. What the law of Pennsylvania was at the time of the accident was a question of fact, properly, to be ascertained by testimony of opinion witnesses, and like any other question of fact was for the jury to determine. *Title Guarantee and Trust Co.* v. *Trenton Potteries Co.,* 56 *N. J. Eq.* 441; *Coryell* v. *Buffalo Union Furnace Co.,* 88 *N. J L.* 291.

The tenth ground of appeal, founded upon the refusal of the trial judge to declare a mistrial, because of the alleged admission of illegal testimony prejudicial to the appellant, is not only not upheld by the facts, but has no exception to support it.

The eleventh and last ground of appeal proves upon examination to be wholly without merit.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 14.

*For reversal*—None.